**SWORD LINE, Inc., Libelant,**

v.

**UNITED STATES of America, Mississippi Shipping Company, et al., Respondents.**

**Nos. 1929, 1943.**

United States District Court
S. D. Texas, Galveston Division.

June 2, 1954.

Fulbright, Crooker, Freeman, Bates & Jaworski, Carl G. Stearns, Houston, Tex., for libelant.

Royston & Rayzor, Brian S. Odem, U. S. Atty., and C. B. Smith, Asst. U. S. Atty., Houston, Tex., for respondents.

CONNALLY, District Judge.

Libelant seeks to recover the damages resulting from the grounding of its motor vessel Oregon Sword ("Sword" hereafter) on the mud flats of Pelican Spit at the northwest side of the Channel from Bolivar Roads into the harbor at Galveston. Libelant contends this casualty was the direct result of the Sword's being crowded out of its proper place in the Channel, and of the necessary efforts of her captain and crew to avoid a collision, which was accomplished only by a narrow margin. The offending vessel (as libelant contends) was the S.S. St. Augustine Victory ("Victory" hereafter), owned by the United States and then in movement from the "moth ball fleet" near Beaumont, Texas to Galveston, Texas for dry-dock and reconditioning. At the time in question, the Victory was a dead ship, in tow of three tugs; the Albatross, being made up on her starboard bow with a single line, the H. O. Weatherbee on her port bow by two lines, and the Propeller on her port quarter by three lines.

It is undisputed that the Sword sailed from Pier 35 in Galveston at 11:40 p. m., July 21, 1950. At 0014 hours the following morning (12:14 a. m. of July 22, 1950), she was outbound about mid-channel, and opposite Fort Point. At this time the tow was east of Pelican Spit and just entering the Galveston Channel from Bolivar Roads. In these respective positions, and while approximately one-half mile apart, each vessel observed the presence of the other. The Victory blew two whistle blasts (or had a tug do so, as she was without power) for a starboard to starboard passing. This signal was heard and understood by the Sword. A starboard to starboard passing at that time was entirely feasible and proper.

It is likewise undisputed that as the vessels drew in close proximity to one another, the Victory sounded four blasts of her whistle (danger) and put all three tugs full astern; the Sword went hard to her port, and passed across the bow of the Victory, with a clearance of some fifty to two hundred feet. The reason for or the necessity of this maneuver is sharply disputed. Likewise, in the foregoing chain of events, the time when the Victory sounded her danger signal is not entirely clear. After the vessels had cleared, the Sword attempted to regain the Channel by a hard right but grounded at a spot southwest of Pelican Spit Buoy some six hundred feet and north and west of the edge of the marked Channel some three hundred feet.

Libelant's witnesses say that immediately on receiving the two blasts from the Victory, the Sword answered with two, and went easy left preparatory to a starboard to starboard passing; that the vessels were then a distance of some five hundred to six hundred feet apart and properly aligned for such passing; that suddenly the tug on the Victory's star-

board bow (later determined to be the Albatross) broke her line, whereupon the Victory took a sudden sheer to her starboard. This brought the Victory on to a course which, if pursued, would have resulted in collision with the Sword; whereupon the latter, despite the narrow margin along the northwest side of the Channel then open, took a hard left and while averting the collision, fetched up upon the Spit.

The version offered by witnesses of the respondents is quite different. They say that after the initial two blasts from the Victory, no acknowledgment was received from the Sword for several minutes during which time the Sword was observed drawing slightly toward her starboard (which would have placed her too far to the southeast side of the Channel for a starboard to starboard passing). At about the time when the captain of the Victory was becoming apprehensive, the Sword blew a single blast of her whistle (the signal for a port to port passing). The Victory immediately gave the danger signal, and ordered all three tugs full astern. The Sword turned hard to her port, for a moment was aligned almost perpendicularly across the Channel, and passed across the bow of the Victory. The collision was avoided only by the manful effort of the tugs and their crews in killing the Victory's headway and in bringing her to a stop, or perhaps in having gained some sternway before and at the time the Sword was passing her bow.

The captain of the Victory, conceding that the Albatross broke her line and that the Victory's head swung to starboard, has testified that this occurred after the vessels had cleared, after the Sword was aground, and resulted from the fact that the Victory had gained some sternway before the vessels passed; and that on again going forward to resume the towage after the danger was passed, the Albatross in going forward against the backward movement of the Victory snapped the line.

I am not at all satisfied that either version presents an entirely reliable or accurate recital of what transpired on the night in question. The uncertainty or conflict in the evidence may perhaps be partially explained by the fact that the casualty occurred in total darkness, and with a few distant lights or bells furnishing the only landmarks. On the whole, however, I feel that the respondents have considerably the best of it on the evidence, and that the libelant has failed to sustain its burden of proving fault on the part of the Victory or her tugs. I feel, and find, that the sole cause of the grounding was the fact that, through a want of complete familiarity with the waters[1] or by reason of inattention and neglect,[2] the captain of the Sword misconceived his position in the Channel. By reason thereof, the hard left maneuver was required in order to accomplish the starboard to starboard passing that had been agreed upon, and it was the undue delay of the Sword in gaining the northwest side of the Channel which caused the casualty to occur.

I find that the sheer to her starboard, which admittedly was made by the Vic-

1. The captain of the Sword had held a pilot's license for these waters something less than a year. The captain of the Victory, as well as those in charge of the tugs, all were thoroughly familiar with the waters in question, and had worked in and around the Galveston harbor daily for long periods of time.

Similarly, while the testimony of the other witnesses was not entirely uniform in locating the Victory in the Channel when the vessels first sighted one another, the captain of the Sword places this location considerably farther to the north and west than do any of the other witnesses.

2. In this connection, it will be noted that the captain of the Sword testified positively and without qualification or equivocation that there were no lights on the Victory at all; that he could not be mistaken in this respect. The Respondents proved by a great preponderance of the evidence that the Victory carried the regulation kerosene lights prescribed for a vessel without power, and that such lights might be seen and recognized at a considerable distance.

tory, occurred after the grounding had taken place and as she was attempting to resume her forward motion, and had no causal connection with the grounding.[3]

Finding the Victory and her tugs to be seaworthy and without fault or negligence, and finding the sole cause of the casualty to have been the fault of the Sword and her master, it follows that libelant is not entitled to recover. Thus it becomes unnecessary to pass upon other issues raised, as to the liability among the respondents.

Counsel for the respondents will submit suggested Findings of Fact and Conclusions of Law, and appropriate order herein, within ten days. Clerk will notify counsel.

---

3. The flotilla never attained a speed of more than some two to three miles per hour from the time the three tugs took over the Victory until after the grounding.